UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RONALD SCOTT EDDINGTON,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>IDAHO GOVERNOR BRAD LITTLE; IDAHO BOARD OF CORRECTIONS CHAIRMAN DR. DAVID McCLUSKY; IDOC DIRECTOR JOSH TEWALT; and IDAHO DEPARTMENT OF CORRECTION,<br><br>　　　　　　Defendants. | Case No. 1:20-cv-00574-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

　　　　The Clerk of Court conditionally filed Plaintiff Ronald Scott Eddington's Complaint as a result of Plaintiff's status as an inmate and in forma pauperis request. The Court now reviews the Complaint to determine whether it or any of the claims contained therein should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order directing Plaintiff to file an amended complaint if Plaintiff intends to proceed.

**1.　　Screening Requirement**

　　　　The Court must review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a

INITIAL REVIEW ORDER BY SCREENING JUDGE - 1

frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

**2.     Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted). And, a court is not required to comb through a plaintiff's exhibits or other filings to determine if the complaint states a plausible claim.

**3.     Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"). Plaintiff is currently incarcerated at Saguaro Correctional Center ("Saguaro") in Eloy, Arizona, pursuant to a contract between the IDOC and the company operating Saguaro. Plaintiff previously was incarcerated in Texas before the contract between the IDOC and the Texas prison expired. Plaintiff's claims—which all involve prison

INITIAL REVIEW ORDER BY SCREENING JUDGE - 2

officials' actions (or inaction) with respect to the COVID-19 pandemic—arise from his transfer to Saguaro on August 18, 2020, and the events leading up to that transfer. *See Compl.*, Dkt. 1.

The IDOC had contracted with GEO Corp., the entity operating the private prison in Texas where the Idaho inmates were confined. This contract was set to expire on October 1, 2020. Therefore, in the months before that date, IDOC officials and the Idaho Board of Correction ("Board") were working to extend the contract or to find a different contracting party. The IDOC chose a different prison operator and entered into a contract with CoreCivic Corp., which operates Saguaro. *Id*. at 3.

In July 2020, Josh Tewalt, Director of the IDOC, sent an email to inmates and staff about the IDOC's approach to the pandemic:

> I want to share with you what we have learned from other systems who [sic] have battled COVID at the onset of the pandemic. It is widely believed that in the public at large, significantly more positive cases exist where people never develop symptoms or experience complications… For our system, we are going to keep testing as many people as possible to try to identify everyone who is positive, regardless of symptoms.
>
> Here's why that is important, we have to identify positives so we can do contact tracing to identify people who might have had close contact with those positive individuals. Then we quarantine and keep testing. The strategy for battling COVID in the community is the same as it is in prison. Test, Trace & Quarantine.

*Id*. at 4 (omission in original).

In an August 8, 2020 email, non-defendant Tim Higgins, the Contract Prison Oversight Manager, stated that the IDOC "will comply with all Center of Disease Control

INITIAL REVIEW ORDER BY SCREENING JUDGE - 3

standards during the transfer of the inmates [from Texas], either to the out-of-state facility in Arizona [Saguaro] or back to Idaho." *Id*.

On August 18, 2020, Plaintiff, along with 147 other inmates who had been held in the Texas prison, were transferred to Saguaro. The Texas officials did not test any of the inmates for COVID-19 prior to the transfer. The inmates all wore masks and were assembled "in a hallway just outside the intake area of the [Texas] prison." *Id*. at 6. The inmates waited there, "side by side," for several hours.

Non-defendant Monte Hansen, the IDOC Contract Prison Oversight Unit Representative, spoke with the group of inmates. When asked why the inmates were not tested for COVID-19, Hansen "was initially evasive but at one point stated the decision must have been made not to test but that he did not know the reason." *Id*.

During the process of preparing for the transfer and throughout the transfer itself, "there was no attempt to conduct social distancing or even minimize contact between inmates and staff." *Id*. at 7. The inmates were shackled individually and then shackled in pairs, being unable to move more than a few inches from each other." The buses transporting the inmates to the airport were "tightly packed" and the windows were closed, "allowing air to recirculate throughout the interior." *Id*. The inmates remained "tightly packed" on the airplane, at the Phoenix airport, and on the bus to Saguaro. *Id*.

The inmates had to wait two or three hours upon arrival at Saguaro before being taken off the bus. As the inmates were processed into Saguaro, several unidentified

INITIAL REVIEW ORDER BY SCREENING JUDGE - 4

individuals told inmates they had to wait because "processing staff were unaware that the Eagle Pass inmates were coming and were unprepared." *Id*. at 8.

For an unidentified security reason, at the processing station the inmates "were required to put their chins directly on a table, then place the right side of their face followed by the left side of their face directly on the table." *Id*. It is unclear whether the table was cleaned before each inmate performed this security check.

During the intake process, all of the transferred inmates were tested for COVID-19. While the results of the tests were pending, the inmates "were assigned two-man cells to begin the quarantine process. With no prior testing at [the Texas prison], this was done without any knowledge or regard for who was positive." *Id*. It appears from the Complaint that Plaintiff tested negative.

On August 28, 2020, medical personnel visited only those inmates who tested positive. "An inmate in cell LC14 was informed that he had tested positive for COVID-19." *Id*. at 9. Plaintiff was in cell LC13, which was next door to LC14. The inmate who tested positive remained in LC14 for three days, after which "all inmates who tested positive were moved into two-man cells on LC tier with other inmates who tested positive." *Id*.

The cellmates of the COVID-positive inmates remained in their cells, leaving some of the cells with only a single inmate. The inmates who had requested but were not given a bottom bunk were allowed to move into the cells that had only one inmate, to get a bottom bunk if they wanted to do so. *Id*. It is unknown whether the COVID-positive

inmate's cellmates were retested for COVID-19 after spending three days with known COVID-positive inmates. Even though Plaintiff's cellmate had requested a bottom bunk, he declined to move into LC14 because of this uncertainty.

In a phone call with Plaintiff's mother on September 8, 2020, Saguaro prison official D. Sigmon stated "that there would be no further COVID-19 testing of inmates." *Id*. at 10. A Saguaro medical provider later told Plaintiff that none of the inmates who tested negative when they were initially transferred would be retested, "unless they were to exhibit symptoms of COVID." *Id*. at 10–11.

On September 10, Monte Hansen sent an email that stated, "At this time, we will have a monitor at the facility weekly. In addition, the monitor and the IDOC medical team are updated regularly on the COVID status" of the Idaho inmates at Saguaro. *Id*. at 10.

Relying on the Eighth Amendment to the U.S. Constitution, Plaintiff alleges that the transfer of the Idaho inmates from Texas to Saguaro—as well as the intake process and the COVID approach taken at Saguaro—violated 42 U.S.C. § 1983, the federal civil rights statute. *Id*. at 11–19. Plaintiff names as Defendants the IDOC, Director Tewalt, the chairperson of the Board, and the Governor of Idaho. Plaintiff seeks only "punitive damages." *Id*. at 20.

**4.    Discussion**

Plaintiff has not alleged sufficient facts to proceed with the Complaint. The Court will, however, grant Plaintiff 60 days to amend the Complaint. Any amended complaint should take into consideration the following.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 6

### A.     *Standards of Law Governing Plaintiff's Claims*

To state a plausible civil rights claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Prison officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, a prison official "may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) set in motion a series of acts by

INITIAL REVIEW ORDER BY SCREENING JUDGE - 7

others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

A claim that a supervisor or training official failed to adequately train subordinates ordinarily requires that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training official] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). That is, to maintain a failure-to-train claim, a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 72 (2011). Likewise, "a failure to supervise that is sufficiently inadequate may amount to deliberate indifference" that supports a § 1983 claim, but there generally must be a pattern of violations sufficient to render the need for further supervision obvious. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted). That is, if a supervisory or training official had "knowledge of the unconstitutional conditions" through such a pattern of violations—including knowledge of the "culpable actions of his subordinates"—yet failed to act to remedy those conditions, that official can be said to

have acquiesced "in the unconstitutional conduct of his subordinates" such that a causal connection between the supervisor and the constitutional violation is plausible. *Starr*, 652 F.3d at 1208.

Plaintiff asserts his § 1983 claims under the Eighth Amendment, *see Compl*. at 11–19, which protects prisoners against cruel and unusual punishment and guarantees prisoners the right to minimally adequate conditions of confinement. "[T]he Constitution does not mandate comfortable prisons, and prisons … cannot be free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). However, although prison conditions may be restrictive—even harsh—without violating the Eighth Amendment, prison officials are required to provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Id.* at 347; *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

To state a claim under the Eighth Amendment, prisoners must show that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012),

*overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

As for the objective prong of the analysis, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather, the deprivation alleged must be objectively sufficiently harmful or, in other words, sufficiently "grave" or "serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

With respect to the subjective prong of an Eighth Amendment violation, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319.

To exhibit deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). Moreover, even prison officials who *did* actually know of a substantial risk to inmate health or safety will not be liable under § 1983 "if they

responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

### B. The Complaint Fails to State a Plausible Claim

For the following reasons, the Court concludes that the Complaint fails to state a claim upon which relief may be granted.

#### i. Claims against IDOC

States and state entities are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, Plaintiff's claims against the IDOC are implausible. Further, even if the IDOC were a "person" for purposes of § 1983, it would be immune from suit in federal court under the Eleventh Amendment. *Hans v. Louisiana*, 134 U.S. 1, 16-18 (1890); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Quern v. Jordan*, 440 U.S. 332, 342–44 (1979) (holding that § 1983 does not waive state sovereign immunity); *Esquibel v. Idaho*, No. 1:11-cv-00606-BLW, 2012 WL 1410105, at *6 (D. Idaho Apr. 23, 2012) (holding that Idaho itself has not waived state sovereign immunity for constitutional claims).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 11

ii. Claims against Individual Defendants

a) *Official Capacity Claims*

Plaintiff's claims against Director Tewalt, Chairperson McClusky, and Governor Little in their official capacities are implausible for the same reason as Plaintiff's claims against the IDOC. *Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them.").

b) *Individual Capacity Claims*

Plaintiff's individual capacity claims against Defendants Tewalt, McClusky, and Little are also implausible, but for other reasons. Plaintiff complains of actions taken by various Texas and Arizona prison officials during the transport of the inmates to the Arizona facility and the processing of those inmate once they arrived at the facility. However, the Complaint does not support a reasonable inference that the Board Chairperson, the Governor, or the Director of the IDOC were personally involved in those actions. Nor has Plaintiff plausibly alleged a sufficient causal connection between the alleged constitutional violations and any of these Defendants.

One cannot reasonably infer from Plaintiff's allegations that the three supervisory-level officials were aware of the events on the ground as they happened during the transfer, or that these Defendants planned the transfer of inmates to such a fine level of detail that they knew (or suspected) that, for example, the bus windows would be closed or that Arizona officials would require that inmates place their faces on a table in quick succession. The only personal participation or causal connection alleged in the Complaint

INITIAL REVIEW ORDER BY SCREENING JUDGE - 12

with respect to Defendants Tewalt, McClusky, and Little is that these Defendants entered into or negotiated the contract between the IDOC and Saguaro for the housing of Idaho inmates. Such a vague assertion is woefully inadequate to state a plausible Eighth Amendment claim.

Moreover, Plaintiff relies on the CDC Guidelines to support his constitutional claims. But those Guidelines, by themselves, cannot form the basis of a § 1983 claim, though they might be relevant in certain circumstances. *See Bell v. Wolfish*, 441 U.S. 520, 543 n.27 (1979) ("[W]hile the recommendations of [such] various groups may be instructive in certain cases, they simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question."); 42 U.S.C. § 1983 (providing a remedy for the "deprivation of any rights, privileges, or immunities secured by *the Constitution and laws*" of the United States) (emphasis added).

5.      **Standards for Amended Complaint**

If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see*

INITIAL REVIEW ORDER BY SCREENING JUDGE - 13

*also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular federal constitutional provision (or state law provision) Plaintiff alleges has been violated; (6) facts alleging that the elements of the violation are met; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant.

Further, any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa*

*County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate numbered paragraph. The amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as an "Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files an amended complaint, Plaintiff must also file a "Motion to Review the Amended Complaint." If Plaintiff does not amend within 60 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1. The Complaint fails to state a claim upon which relief may be granted. Plaintiff has 60 days within which to file an amended complaint as described above. If Plaintiff does so, Plaintiff must file (along with the amended complaint) a Motion to Review the Amended Complaint. If

INITIAL REVIEW ORDER BY SCREENING JUDGE - 15

        Plaintiff does not amend within 60 days, this case may be dismissed without further notice.

2.    Alternatively, Plaintiff may file a Notice of Voluntary Dismissal if Plaintiff no longer intends to pursue this case.[1]

DATED: April 6, 2021

B. Lynn Winmill
U.S. District Court Judge

---

[1] A voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1) is not a dismissal for frivolity, for maliciousness, or for failure to state a claim upon which relief may be granted and, therefore, does not count as a "strike" under 28 U.S.C. § 1915(g).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 16